UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARTIN DIGGS,

                       Petitioner,

    -against-

DALE ARTUS, Superintendent, Clinton Correctional
Facility,

                       Respondent.
------------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
10-CV-1233 (CBA)

AMON, Chief United States District Judge:

       Martin Diggs, *pro se*, petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking his release from custody ordered on convictions of attempted first-degree murder, N.Y. Penal Law § 125.27(1)(a)(i) ("the intended victim was a police officer"), second-degree criminal possession of a weapon, former N.Y. Penal Law § 265.03(2), and third-degree criminal possession of a weapon, former N.Y. Penal Law § 265.02(4). The petition is denied.

## BACKGROUND

### I. The Crime and Prosecution

       Diggs was tried in Kings County Supreme Court in October 2004. The prosecution offered evidence of the following facts.

       On the evening of May 21, 2003, New York City Police Officers Danny Perez and Pete Garrido were patrolling a section of Crown Heights in an unmarked police car. The officers were in plain clothes. Perez was driving. (Tr. at 327-29 (Perez); 412-13 (Garrido).) The officers were aware of an identified robbery pattern in the patrol area. (Id. at 329 (Perez); 413 (Garrido).) Near midnight, the officers received a radio report of a suspicious man on St. Marks Avenue between Carlton and Vanderbilt Avenues. (Id. at 329-30, 379 (Perez); 414 (Garrido).)

The officers responded within minutes. (Id. at 331 (Perez); 416 (Garrido).) On St. Marks, they saw two men: one was walking his dog and the other was trailing the dog walker, about three car lengths back. (Id. at 332-33 (Perez); 416-17 (Garrido).)

Perez and Garrido drove alongside the man with the dog and Perez, identifying himself as a police officer, asked the man whether he had seen anyone looking into cars or "doing anything out of the ordinary." The man said that he had not. (Id. at 332-33, 370 (Perez); 416 (Garrido).) Perez then pulled alongside the other man, Diggs, and—again identifying himself as a police officer—asked the man whether he had seen anything suspicious in the area. Diggs, who never stopped walking, said that he had not and that he was headed to "the store." The officers continued their patrol. (Id. at 333-36, 367 (Perez); 417-19 (Garrido).)

Perez and Garrido returned to the area (this time on Carlton) about ten minutes later. They noticed a man, with his back to the street, preparing to enter a brownstone. He was standing at the top of a flight of stairs. (Id. at 337-38 (Perez); 420-21 (Garrido.) They also noticed Diggs standing at the bottom of the stairs, either just inside or just outside a gate that separated the stairs from the public sidewalk. (Id. at 339 (Perez); 420 (Garrido).) It appeared to Garrido that the man entering the building was unaware of Diggs. (Id. at 421 (Garrido).)

The officers saw Diggs look in their direction. Diggs then quickly walked away from the building and the man. (Id. at 339-40, 384-85 (Perez); 421 (Garrido).) Concerned that the officers had just interrupted a robbery or burglary, Perez looked at his partner and said: "I'd like to go speak to this guy." (Id. at 340 (Perez).) Perez pulled the patrol car alongside Diggs, who was on the sidewalk next to Garrido's passenger-side window. Perez, again identifying himself as a police officer, asked Diggs if he could speak with him. (Id. at 340-42, 385 (Perez); 422 (Garrido).)

2

Diggs was agitated and responded: "You guys already talked to me. Why are you guys bothering me? I already told you I'm going home." (Id. at 342 (Perez).) Perez knew that Diggs had previously told the officers that he was headed to the store, not home. (Id. at 342-43 (Perez).) Perez asked Diggs where he lived and Diggs provided an address that the officers knew was not in the area, or at least not in any direction that Diggs had been seen walking that evening. (Id. at 343 (Perez); 423 (Garrido).)

The officers decided to get out of their patrol car. (Id. at 343 (Perez).) Garrido exited first, followed by Perez. (Id. at 343 (Perez); 423 (Garrido).) As Garrido approached Diggs, Diggs held out his arms at chest height and said, more than once, "I'm not going back to jail." (Id. at 344 (Perez); 425 (Garrido).) Diggs backed away from Garrido and began to reach behind his back with his left hand. (Id. at 344 (Perez); 424 (Garrido).) Concerned that Diggs was reaching for a weapon, Garrido grabbed Diggs's left hand in an attempt to pull it from behind his back. (Id. at 424-25 (Garrido).) Diggs slapped Garrido's arm and pushed Garrido back. (Id. at 425.) Diggs again reached behind his back with his left hand, and Garrido again grabbed again Diggs's left arm. As he did so, a black semi-automatic handgun fell to the sidewalk. (Id. at 344, 389 (Perez); 425 (Garrido).) Perez called out "ninety two," signaling to Garrido that Diggs should be arrested. (Id.)

At some point either before or after Perez called out "ninety two," Diggs also reached, with his right hand, towards the front of his waistband. (Id. at 345 (Perez); 425 (Garrido).) Perez grabbed Diggs's arm and collar area, pulled Diggs away from where the firearm had fallen to the sidewalk, and yelled at Garrido to call for back up. (Id. at 345 (Perez); 425-26 (Garrido).) Perez testified that Diggs fought back and continued to reach for his waist area. (Id. at 346 (Perez).) The officers pulled Diggs to the ground and away from the semi-automatic handgun.

3

(Id. at 426 (Garrido).) Diggs ended up on his stomach, with both of his hands beneath him. (Id. at 346 (Perez), 426 (Garrido).) The officers worked to secure Diggs with handcuffs: Perez attempted to pull Diggs's right arm out from beneath him and behind his back while Garrido worked similarly on the left arm. (Id. at 426 (Garrido).)

Garrido testified that at about this time, he left the struggle and retrieved the semi-automatic handgun that Diggs had earlier dropped. (Id. at 427-28 (Garrido).) Garrido secured the firearm in the front of his waistband. (Id. at 428 (Garrido).) Perez testified that he remained on top of Diggs, and Diggs repeatedly struck him with his left hand. (Id. at 347 (Perez).) Garrido returned to the struggle and was eventually able to secure and handcuff Diggs's left arm. (Id. at 428 (Garrido).)

According to Perez, as the men struggled, he "kind of slid[] off of" Diggs's right side. (Id. at 348 (Perez).) He testified that Diggs then "pick[ed] up his [Diggs's] midsection" and "arched up," "getting a little bit of leverage off of me." (Id.) Garrido, who, again, was positioned slightly to Diggs's left, testified that as he was securing Diggs's left hand, Diggs "was trying to push up" and "bridging his body up against me." (Id. at 428 (Garrido).) He testified that "it seemed like he [Diggs] still had his right hand underneath him." (Id.) Garrido thought that Diggs was trying to throw Perez off of his back. (Id. at 428–29 (Garrido).)

A couple of seconds later, the officers heard and felt two "loud bangs" from beneath Diggs. (Id. at 349 (Perez), 428-29 (Garrido).) Garrido testified that "there was a lot of light and heat from underneath" him. (Id. at 429 (Garrido).) Perez testified that the bangs came from his "left side which would have been the defendant's right side while he was on the floor." (Id. at 349 (Perez).) After the gun shots went off, Perez jumped off of Diggs and saw two shell casings

4

hit the ground. (Id.) Perez also testified that although he did not see Diggs fire a gun, he saw him "starting to bring up" and "starting to aim" a silver object that was a gun. (Id. at 397.)

Garrido testified that when the gun shots went off, he "felt a lot of pressure in [his] chest, like somebody kicked [him] or punched [him] very hard in the chest." (Id. at 429 (Garrido).) According to Garrido, the gun shots caused the men to "spring apart." (Id.) Although Garrido did not immediately realize it, he had been shot, once in the chest (he was wearing a bullet proof vest) and once in the ankle. (Id. at 429-30, 434.)

Perez quickly came around Diggs and grabbed Garrido, who said that he was "hit." (Id. at 350 (Perez).) Perez testified that he started "pulling [Garrido] away backwards keeping an eye on" Diggs. (Id. at 350 (Perez).) At that point, the officers saw Diggs "start[] to rise up from a crouched position." (Id. at 430 (Garrido).) Diggs had a silver firearm in his right hand, which he was leveling at the officers. (Id. at 350–51, 401 (Perez), 430-31, 452 (Garrido).)

Garrido, thinking that Diggs had somehow recovered the semi-automatic handgun that he dropped at the beginning of the encounter, reached for his waistband (where he had previously secured it). (Id. at 430 (Garrido).) The firearm was still there. As Diggs pointed the silver firearm the officers, Garrido pulled the semi-automatic handgun from his waistband and "fired at him [Diggs] until he stopped pointing the gun." (Id. at 430–32 (Garrido).)

Perez pulled Garrido to safety. He then secured Diggs, who had fallen into the bushes, and radioed for an ambulance. (Id. at 352 (Perez); 432-33 (Garrido).) Garrido, Perez, and Diggs were all transported the hospital. (Id. at 354 (Perez).) Perez suffered bruising to both hands. (Id. at 355 (Perez).) Both Garrido and Diggs survived their gunshot wounds.

Diggs was subsequently indicted on a host of charges, including, relevant here, first-degree attempted murder, N.Y. Penal Law § 125.27(1)(a)(i) ("the intended victim was a police

officer"), second-degree criminal possession of a weapon, former N.Y. Penal Law § 265.03(2), and third-degree criminal possession of a weapon, former N.Y. Penal Law § 265.02(4).

Diggs moved pre-trial to suppress the firearms recovered on the night of his arrest. He also sought to suppress certain pre-arrest statements. The hearing court held a combined Mapp / Dunaway hearing on July 7, 2004. At that hearing, the state called Officer Perez, who testified to substantially the facts described above. (Tr. at 1-51.) Diggs, through counsel, cross-examined Perez. At the close of the evidence, counsel argued for suppression, urging that when the officers encountered Diggs for a second time on the night of May 21, 2003, Diggs "was approached for no apparent reason." (Id. at 46.) Counsel rejected the idea that Diggs's inconsistent statements regarding his destination that night (i.e. store v. home) provided the officers with cause to do as they did. (Id. at 46–47.) The hearing court disagreed. She ruled that the officers, when they identified Diggs lurking behind a man who was preparing to enter a brownstone, had the right to approach him. She ruled that everything that happened after the officers' initial approach was "at the defendant's impetus." (Id. at 47.)

After a trial at which the prosecution offered the evidence described above and Diggs offered no defense case, Diggs was convicted on one count of attempted first-degree murder, one count of second-degree criminal possession of a weapon, and one count of third-degree criminal possession of a weapon. On December 9, 2004, the trial court sentenced Diggs to concurrent terms of twenty five years to life on the attempted murder conviction, fifteen years on the second-degree weapons conviction, and seven years on the third-degree weapons conviction.

## II. Direct Appeal

Diggs, through new counsel, filed his initial appellate brief with the Appellate Division, Second Department, on May 17, 2007. There, he argued that the state "failed to prove beyond a

reasonable doubt, and the verdict was against the weight of the evidence, that appellant deliberately shot at Garrido with the intent to kill him, rather than firing accidentally or in a desperate reckless attempt merely to free himself." (App. Br. at 12.) Diggs argued that there was "no evidence that appellant took aim at Garrido and fired with the intent to kill him." (Id. at 13.) He said that his "actions before [and] after the shooting" also did not "demonstrate an intent to kill." (Id. at 14.) The weight of the evidence, he also urged, showed only that he had acted recklessly in shooting Garrido. (Id. at 15 (citing People v. Cruz, 126 A.D.2d 495 (1st Dep't 1987)).)

The state filed its opposition brief on August 3, 2007, urging first that Diggs had not preserved his challenge to the sufficiency or weight of the intent evidence with respect to the attempted murder charge. It agreed, as Diggs's brief indicated, that defense counsel had, in his trial motion to dismiss the charges, asserted that there was no evidence that Diggs aimed a gun at Garrido. But, it argued, counsel had asserted that fact only to support his argument that there was no evidence that the shots that struck Garrido came from Diggs. (Resp. App. Br. at 13–14.) The state also argued that, even if the sufficiency and weight of the evidence arguments were preserved, they were without merit. (Id. at 14–21.)

Diggs subsequently filed a *pro se* supplemental brief, dated March 26, 2008, asserting three arguments. First, he argued that the trial court had not properly instructed the jury with respect to the intent element of the attempted murder charge. He asserted that the trial court "did not instruct the jury on defendant's 'mental state' and that the People had to prove beyond a reasonable doubt that appellant had that mental state." (Supp. App. Br. at 16.) He argued that instead, the trial court "repeatedly related the instructions only to appellant's conduct." (Id.) Diggs contended that the recently decided appeal of People v. Feingold, 7 N.Y.3d 288 (2006),

7

made plain the error of the trial court. Apparently acknowledging that he had not objected to the jury charge at trial, he argued that he had no obligation to object or, alternatively, that the Appellate Division should exercise its interest of justice review authority. (Id. at 18–19.) Second, Diggs argued that the hearing court erred in denying his suppression motion. (Id. at 20–25.) He pressed that, at the very least, Perez and Garrido stopped him without sufficient cause in violation of the rule of Terry v. Ohio, 392 U.S. 1 (1967); see also United States v. Simmons, 560 F.3d 98, 103–09 (2d Cir. 2009). Third, Diggs repeated the argument that his attempted murder conviction was not supported by sufficient evidence that he acted with the intent to kill Garrido and that the verdict was against the weight of the evidence. (Id. at 26–28.)

The state responded to the supplemental brief on June 30, 2008. With respect to the jury charge, it argued that Diggs had forfeited his challenge to the intent instruction by not objecting at trial, and that in any event, the challenge was without merit. (Resp. Supp. App. Br. at 3-6.) With respect to the suppression motion, it defended the hearing court's ruling on the merits. (Id. at 7-12.) It relied on its principal brief with respect to the sufficiency challenge to the intent evidence. (Id. at 13.)

The Appellate Division affirmed the conviction in a written order dated November 25, 2008. People v. Diggs, 56 A.D.3d 795, 868 N.Y.S.2d 156 (2d Dep't 2008). With respect to the sufficiency and weight arguments, the Appellate Division ruled that Diggs's challenge was unpreserved for appellate review. Id. at 796 (citing N.Y. C.P.L. § 470.05(2) (contemporaneous objection rule)). It ruled that the challenge was, in any event, without merit, explaining that Perez's and Garrido's testimony entitled the jury "to infer that the defendant purposefully aimed his weapon at Officer Garrido before firing twice and hitting the officer in the chest and ankle." Id. Viewing this evidence "in the light most favorable to the prosecution," the court found that

there was legally sufficient evidence of intent to kill. Id. The court also rejected the weight of the evidence argument on the merits. Id. With respect to the jury charge, the Appellate Division found Diggs's position meritless, concluding that "the court properly instructed the jury at least three times that the element of intent had to be proved beyond a reasonable doubt" and that "the court did not err in instructing the jury that it was permitted to consider the defendant's conduct in determining the issue of intent." Id. Finally, the Appellate Division rejected the challenge to the hearing court's suppression ruling on its merits, stating that the "scope and intensity of the police officers' actions were reasonable in light of the developing circumstances." Id. (quoting People v. Foster, 173 A.D.2d 841, 844 (2d Dep't 1991)).

Diggs, through counsel, requested leave to appeal from the New York State Court of Appeals in a letter filed December 22, 2008. Diggs subsequently filed a *pro se* leave letter. The state opposed leave to appeal in a letter dated January 28, 2009. The Court of Appeals denied leave to appeal on February 24, 2009. People v. Diggs, 12 N.Y.3d 757 (2009) (Pigott, J.).

### III. Federal Habeas

The *pro se* petition that is the subject of this order is dated March 9, 2010 and was received on March 15, 2010. The petition asserts the same arguments that were litigated on direct appeal: (a) the state did not prove beyond a reasonable doubt that Diggs shot Garrido with the intent that he die, such that the verdict on the attempted murder charge was based on legally insufficient evidence and was against the weight of the evidence; (b) the trial court did not properly instruct the jury with respect to the intent element of the attempted murder charge; and (c) Perez and Garrido's stop of Diggs violated Diggs's Fourth Amendment rights. As set forth below, none of these arguments entitles Diggs to habeas relief.

9

## DISCUSSION

A petitioner in state custody pursuant to a state criminal judgment is entitled to federal habeas relief only if he can establish that he is being confined in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254. A petitioner seeking federal habeas relief must first exhaust his state court remedies. 28 U.S.C. § 2254(b); see also Daye v. Att'y Gen., 696 F.2d 186, 191–92 (2d Cir. 1982) (en banc). Claims that are presented to the state courts but denied on state procedural grounds are deemed procedurally defaulted and generally cannot support federal habeas relief. Harris v. Reed, 489 U.S. 255, 262 (1989) ("an adequate and independent finding of procedural default will bar federal habeas review of the federal claim"). The same is true of unexhausted claims that can no longer be presented to a state court. See Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) ("when the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, federal habeas courts must also deem the claims procedurally defaulted" (internal quotations omitted)).

A petitioner may obtain review notwithstanding default where he can establish "cause for the default and actual prejudice as a result of the alleged violation of federal law," Coleman v. Thompson, 501 U.S. 722, 750 (1991), or "that he is actually innocent of the crime for which he has been convicted," Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002); see also Schlup v. Delo, 513 U.S. 298, 321–22 (1995) (actual innocence exception appropriate only in "extraordinary cases").

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), where a federal claim is properly presented to the state courts and adjudicated against the petitioner on the merits, that claim will support federal habeas relief only if the state court decision "was

contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or . . . [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); see also Williams v. Taylor, 529 U.S. 362, 412–13 (2000); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005).

The Supreme Court has said that "clearly established federal law" means "the holdings, as opposed to the dicta," of its decisions at the time of the state court adjudication. Williams, 529 U.S. at 412. A decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Id. at 412–13. A decision involves an unreasonable application of clearly established federal law if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. An unreasonable application of federal law is more than an incorrect application.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011); see also id. ("It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."); Renico v. Lett, 130 S. Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Court considers the four arguments that Diggs has offered in support of his request for a writ of habeas corpus.

11

## I. Sufficiency of the Evidence

Diggs's first argument is that the prosecution did not offer evidence that he intended to kill Garrido sufficient to sustain the attempted murder conviction.

### A. Procedural Bar

Ordinarily, "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim." Harris, 489 U.S. at 262. In finding Diggs's insufficiency claim unpreserved, the Appellate Division relied upon New York's contemporaneous objection rule, N.Y. Crim. P. Law § 470.05(2), (see Diggs, 56 A.D.3d 795, 868 N.Y.S.2d 156), which has long been considered such an "adequate and independent ground," see Whitley v. Ercole, 642 F.3d 278, 292 (2d Cir. 2011). New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error." People v. Luperon, 85 N.Y.2d 71, 78 (1995). Although defense counsel did move to dismiss the charges, including the attempted murder charge, based on insufficiency of the evidence pursuant to N.Y. C.P.L. § 290.10, he did not specifically argue that the evidence was insufficient to establish Diggs' intent to kill. Rather, it is quite apparent from a review of trial counsel's oral motion that instead of arguing that Diggs accidentally or recklessly shot Garrido, trial counsel moved to dismiss on grounds that the prosecution failed to prove that the shots sustained by Garrido were fired by Diggs.

In his counseled appellate brief, Diggs argued to the Appellate Division that trial counsel preserved an objection to insufficiency of evidence of intent when he argued that "there was no testimony that Mr. Diggs aimed a gun at anyone." (App. Br. at 11 (citing Tr. at 790).) When read in context, however, it is clear that this statement was meant to support trial counsel's

argument that the evidence did not establish that Diggs shot Garrido.[1] Trial counsel argued that "there were no fingerprints that directly linked Mr. Diggs to the shooting" and that "there was no precise explanation given as to how Officer Garrido was shot by Mr. Diggs." (Tr. at 789.) Trial counsel contended that, given the supposed positioning of Garrido and Diggs, no bullet could have traveled from beneath Diggs into Garrido without also striking Diggs (and nobody suggested that Diggs had shot himself). (Id.) Also in this vein, counsel argued that no witness had offered evidence that the bullets that struck Garrido were fired from "close range," which they would have been had Diggs fired them. (Id. at 789–91.) No reasonable construction of these statements suggests an argument that, if the evidence established that Diggs was the shooter, the evidence was insufficient to establish that Diggs shot with the intent to kill.

Both parties' summations at trial reinforce this reading of defense counsel's oral motion to dismiss. At summation, defense counsel argued repeatedly that the evidence did not show that the shots that struck Garrido came from Diggs. He renewed the argument that the trial evidence showed clearly that Garrido was "on top of Mr. Diggs," which meant that Diggs could not have shot Garrido without also shooting himself. (Id. at 799.) He argued that the prosecution had to "explain the shoot angles" in this case and that "they never established how my client could shoot Officer Garrido." (Id. at 804, 807.) Defense counsel also urged that there was "no residue or powder traced to Mr. Diggs," which he claimed strongly suggested that Diggs had not fired a weapon on the night of his arrest, much less a weapon positioned close to his stomach or chest. (Id. at 806.) In turn, the prosecutor's summation— delivered after defense counsel closed—

---

[1] Notably, appellate counsel's brief conspicuously omitted the remainder of that sentence, which proceeded to state that the evidence showed "just that two – two explosions were heard." (Def. App. Br. at 11 (citing Tr. at 790).) This was consistent with trial counsel's argument that the evidence was inadequate to show that Diggs shot Garrido.

asked the jury to reject the argument that a "cop would shoot himself twice to make a better story." (Id. at 831.)

New York appellate courts have long insisted that a motion to dismiss for insufficient evidence be "specifically directed at the alleged error." See People v. Carncross, 14 N.Y.3d 319, 324-325 (2010); People v. Finger, 95 N.Y.2d 894, 895 (2000); People v. Gray, 86 N.Y.2d 10, 20-21 (1995); Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011); Sanchez v. Lee, No. 10-cv-7719, 2011 WL 924859, at *17 (S.D.N.Y. Mar. 16, 2011) (collecting cases). As the Second Circuit has explained, the rule means that a "general objection is not sufficient to preserve an issue since such would not alert the court to defendant's position." Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007). It also means that a specific argument offered at trial will not preserve a different specific argument on appeal. See People v. Kello, 96 N.Y.2d 740, 743–44 (2001) (hearsay objection does not preserve confrontation right objection); Murray v. Greene, No. 06 Civ. 3677, 2006 WL 3751294, at *16 (S.D.N.Y. Dec. 21, 2006) ("Failure to specify the grounds for a claim of error at the time of an objection (either because an objection is general, or because it specifies a different ground than that raised on appeal) renders claims not specified unpreserved for appellate review.").

As indicated, at trial Diggs asserted a specific argument about the lack of evidence that he was the shooter. On appeal he asserted a different specific argument about the lack of evidence that he shot with intent to kill. No reasonable construction of the first argument suggested the second. Accordingly, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule, thus barring habeas relief. See, e.g., Brown v. New York, No. 09-cv-2043 (NGG), 2011 WL 3511004, at *2–3 (E.D.N.Y. Aug. 10, 2011) (sufficiency argument barred from review where state appellate court ruled that general argument

that prosecution failed to present a *prima facie* case did not preserve specific sufficiency argument that witness's testimony showed lack of forceful taking); Yara v. Ercole, 558 F. Supp. 2d 329, 336–38 (E.D.N.Y. 2008) (sufficiency argument barred from review where state appellate court found that defendant objected to sufficiency of the evidence but not on the specific ground that a witness's testimony was incredible).

That the Appellate Division also decided this claim on its merits does not change the result. See Galdamez v. Keane, 394 F.3d 68, 77 (2d Cir. 2005) ("where a state court explicitly says that a particular claims fails for a procedural reason, but still reaches the merits, that claim remains procedurally barred"); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000). Finally, Diggs has not asserted, much less established, cause and prejudice or actual innocence sufficient to overcome this procedural bar. Relief on this claim is denied.

## B. Merits

Even if the sufficiency claim were not barred from review, it fails on the merits. "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quoting In re Winship, 397 U.S. 358, 364 (1970)). This means that, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . [,] the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324. "When considering the sufficiency of the evidence of a state conviction, a federal court must look to state law to determine the elements of the crime." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (internal quotation marks and alterations omitted).

15

A federal habeas court assessing a challenge to the sufficiency of the trial evidence views all evidence in the light most favorable to the prosecution. Jackson, 443 U.S. at 319, 326. It will grant relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324. A habeas petitioner pressing a sufficiency argument "'bears a very heavy burden.'" Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d Cir. 1997) (quoting Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993).

The Appellate Division's conclusion that the state offered sufficient evidence of intent to kill is not contrary to, and does not involve an unreasonable application of, clearly established federal law. There was ample evidence that Diggs intentionally fired at Garrido. Most significant, as the state urged on direct appeal, there is evidence that Diggs readied himself to fire by lifting his midsection from the ground and bridging his body up, thereby clearing a path for a bullet to travel from the firearm beneath him to Garrido, who was immediately adjacent to him. (Tr. at 348-49 (Perez); 428-29 (Garrido).) Moreover, the state presented evidence that, upon realizing that he had shot Garrido, rather than recoil or attempt to flee, Diggs immediately raised the firearm to shoot again. (Id. at 350-51, 401 (Perez); 430-31, 452 (Garrido).)

This evidence undercuts the argument that the firearm accidentally discharged during the struggle. New York courts have "consistently held that intent to kill is established when a defendant fires more than one shot at a victim at close range," particularly if the defendant continues to shoot after the victim has fallen. Bonton v. Ercole, No. 08-cv-526 (ARR), 2008 WL 3851938, at *8 (E.D.N.Y. Aug. 18, 20008) (finding "petitioner's intent to kill was established by evidence that he shot [the victim] a second time while [he] was on the ground"); see, e.g., People v. Gonzalez, 1 N.Y.3d 464, 467 (2004) ("The only reasonable view of the evidence here was that defendant intentionally killed the victim by aiming a gun directly at him and shooting him ten

16

times at close range, even after he had fallen to the ground."); People v. Bell, 44 A.D.3d 1065, N.Y.S.2d 407 (2d Dep't) ("The defendant's contention that the proof at trial, which included evidence that he shot the victim twice at close range, was legally insufficient to establish his intent to kill, is without merit."); People v. Peets, 286 A.D.2d 624, 730 N.Y.S.2d 108 (1st Dep't 2001) ("Defendant's intent to kill two civilians and a police officer could be reasonably inferred from the evidence, including that defendant aimed and fired at each of the three victims, and that during the police pursuit defendant turned, advanced in the direction of the officer, and continued to fire." (citation omitted)); see also Scott v. Garcia, No. 09-cv-1554, 2010 WL 917430 GAF (CT), at *6, 12 (C.D. Cal. Mar. 6, 2010) (rejecting sufficiency challenge because the fact that, "once he shot the victim and once the victim fell to the ground, petitioner displayed no remorse, surprise, or concern for the man he had just killed" suggested that the shooting was intentional).

The Appellate Division reasonably concluded that the evidence that Diggs shot Garrido twice from close range and then raised his gun to shoot again was sufficient for the jury to conclude that Diggs shot Garrido with the intent to kill him. Relief on this ground is denied.

## II. Weight of the Evidence

Diggs also argues that the jury's verdict on the attempted murder charge was against the weight of the evidence. This is an argument grounded in New York statutory law. See N.Y. C.P.L. § 470.15(5) (scope of appellate division's review includes "a determination that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) (A "weight of the evidence" argument is a pure state law claim grounded in [N.Y. C.P.L.] § 470.15(5).")

Federal habeas relief generally does not lie for errors of state law. See 28 U.S.C. § 2254(a) (habeas relief available only to petitioners "in custody in violation of the Constitution or

17

laws or treaties of the United States"); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law"); Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006). That rule applies here to bar relief on this ground. See McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus"); Lemons v. Parrot, No. 01 Civ. 9366, 2002 WL 850028, at *3 (S.D.N.Y. May 2, 2002) ("we have no authority to review a weight of the evidence argument because it is a state law claim"); Correa, 172 F. Supp. 2d at 381.

### III. Jury Charge

Diggs's next argument is that the jury was improperly instructed on the requirement that, to sustain the attempted murder conviction, the prosecution must prove beyond a reasonable doubt that Diggs shot Garrido with the intent to kill. Although the precise contours of Diggs's argument are not entirely clear, Diggs appears to believe that the trial court erred in that it "repeatedly related the [intent] instruction to only appellant's conduct." (Supp. App. Br. at 16.) This repeated relation, Diggs appears to urge, suggested to the jury that it could convict Diggs of attempted murder if it found only that he committed certain acts.

Relevant here, a jury instruction violates a defendant's due process rights if it "fails to give effect to [the] requirement" that the prosecution must prove every element of a charged crime beyond a reasonable doubt. Middleton v. McNeil, 541 U.S. 433, 437 (2004); see also United States v. Howard, 506 F.2d 1131, 1134 (2d Cir. 1974). A state prisoner pressing a due process challenge to a jury instruction "faces a substantial burden." DelValle v. Armstrong, 306

18

F.3d 1197, 1200 (2d Cir. 2002). He must establish that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely [that] the instruction is undesirable, erroneous, or even universally condemned.'" Id. at 1201 (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (internal quotation marks omitted)). "In determining the effect of [an] instruction on the validity of [a petitioner's] conviction" it is a "well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp v. Naughten, 414 U.S. 141, 146–47 (1973); see also Justice v. Hoke, 45 F.3d 33, 34 (2d Cir. 1995).

The Appellate Division adjudicated this claim on the merits, even though Diggs had not challenged the jury instruction before the trial court. The Appellate Division's merits determination that the jury instruction in this case did not violate Diggs's constitutional rights is not contrary to, and did not involve an unreasonable application of, clearly established federal law. As an initial matter, although Diggs does not appear to contend otherwise, the trial court properly explained that the prosecution bore the burden of proving intent to kill beyond a reasonable doubt. It opened by telling the jury that the prosecution had the burden generally of proving Diggs guilty beyond a reasonable doubt. It explained also that that burden "attaches to every element of each offense charged." (Tr. at 836, 837.)

It then explained that intent is an element of the attempted murder charge. It instructed that one element of a first-degree murder charge is that the defendant acted "with intent to cause the death of another person." (Id. at 847.) And where the charge is attempted first-degree murder, the prosecution must prove, among other things, that the defendant intended to commit the crime of first-degree murder. (Id. at 850–51.) The trial court specifically explained that the reasonable doubt burden attached to the intent element, stating that

19

> you must decide if the required intent can be inferred beyond a reasonable doubt from the proven facts . . . . [I]n this case from the facts that have been proven you have to decide whether or not you can infer beyond a reasonable doubt the defendant had the intent required for the commission of the crime.

(Id. at 848; see also id. at 850–51, 872-73.) The trial court also explained that whether Diggs had the requisite intent to commit any crime is a question about the operation of his mind:

> Intent means conscious objective or purpose. Thus a person acts with intent to cause the death of another person when his or her conscious objective or purpose is to cause the death of that person. Intent does not require premeditation. . . . Nor is it necessary that the intent be in a person's mind for any particular period of time. The intent can be formed and need only exist at the very moment the person engaged in the prohibited conduct or acts to cause the prohibited result and not at any earlier time.

(Id. at 847–48; see also id. at 849.)

Diggs appears to take issue with the portion of the instruction in which the trial court explained "how to determine whether or not a defendant had the intent required for the commission of the crime." (Id. at 848.) Relevant here, the trial court told the jury that it "may consider the person's conduct and all the circumstances surrounding that conduct," including, "the natural necessary and probable consequences of that conduct." (Id.)

This instruction did not render the charge problematic. It is well-settled as a matter of state and federal law that a jury may infer a defendant's intent from his conduct and the facts surrounding his conduct. See United States v. Nelson, 277 F.3d 164, 197 (2d Cir. 2002) ("it is well-settled that, as a general matter, criminal intent may be proven by circumstantial evidence"); People v. Steinberg, 79 N.Y.2d 673, 682 (1992) ("Intent may be inferred from conduct as well as the surrounding circumstances."). And it is further settled that the jury may be told of this fact. Although "a jury instruction in a criminal case that the law *presumes* that a person intends the ordinary consequences of his voluntary acts violates due process, see

20

Sandstrom v. Montana, 442 U.S. 510 (1979), an instruction that merely *permits* a jury to infer that an accused intends such consequences of such acts is acceptable." Nelson, 277 F.3d at 197 (citing Francis v. Franklin, 471 U.S. 307, 315 (1985)). In the ordinary criminal case, a jury will of necessity infer intent from the defendant's conduct, in view of the other surrounding circumstances. See, e.g., United States v. Johnson, 903 F.2d 1084, 1087 (7th Cir. 1990) ("[D]irect evidence of intent is usually unavailable. In general, it is necessary to prove intent through circumstantial evidence, and a jury may thus rely on evidence of this nature to find that a defendant had the requisite intent to commit the crime charged." (citations omitted)).    People v. Feingold, upon which Diggs relied on direct appeal, did not question or upset this rule. There, the New York State Court of Appeals clarified that, as the term is used in N.Y. Penal Law § 120.25, "depraved indifference to human life is a culpable mental state," not a characterization of the factual setting in which certain conduct occurs. 7 N.Y.3d at 294. Diggs apparently takes this holding to mean that an actor's mental state and conduct are unrelated to a degree that renders the trial court's instruction in this case problematic. The holding does not mean that. Feingold clearly recognized that the "mens rea of depraved indifference to human life can, like any other mens rea, be proved by circumstantial evidence," including conduct undertaken in view of apparent circumstances. Id. at 296.

This is all that the jury was told in this case. At no point did the trial court say to the jury that it could convict Diggs if it found only that he committed certain acts. Instead, the trial court instructed that whether or not Diggs committed certain acts was evidence useful to determining another fact that the jury was required to find beyond a reasonable doubt: intent to kill. The trial court did not devote excessive attention to the evidentiary value of Diggs's conduct. The

21

Appellate Division's affirmance was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Relief on this ground is denied.

## IV. Fourth Amendment

Diggs's final argument is that the hearing court erred in denying his suppression motion. He says that he was stopped within the meaning of Terry v. Ohio, and that Perez and Garrido lacked any "articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the Terry stop. 392 U.S. at 21–22.

This claim is barred from federal habeas review by the rule of Stone v. Powell, 428 U.S. 465 (1976), which says that the merits of a § 2254 petitioner's Fourth Amendment challenge to police conduct are reviewable in federal habeas only if the defendant was denied a full and fair opportunity to litigate this challenge in state court. See Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (habeas review of Fourth Amendment claim available only if "the state has provided no corrective procedures at all to redress the alleged fourth amendment violations" or "the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.").

Diggs had a full and fair opportunity to litigate his Fourth Amendment arguments. Pre-trial, he raised the arguments through counsel. The state court allowed him a combined Mapp / Dunaway hearing. There, he cross-examined Perez and offered legal arguments. Diggs also asserted his Fourth Amendment arguments on direct appeal. There, the appellate court decided the arguments on the merits. There is no suggestion, much less is there evidence, that this process broke down in any way at any stage.

The Fourth Amendment arguments are thus barred from review. See, e.g., id. at 70 n.1 ("Indeed, the federal courts have approved New York's procedure for litigating Fourth

Amendment claims . . . as being facially adequate."); <u>Smalls v. Heath</u>, No. 10-cv-952 (ARR), 2012 WL 244934, at *5 (E.D.N.Y. Jan. 23, 2012) ("The procedures afforded by New York law for redressing claims of alleged Fourth Amendment violations are presumptively valid."); <u>Stapleton v. Graham</u>, No. 09-cv-0382 (ENV) (LB), 2011 WL 1748734, at *5 (E.D.N.Y. May 6, 2011) (petitioner "took full advantage of the New York procedures" by participating in a suppression hearing "which included witness testimony and cross-examination."); <u>see id.</u> ("Petitioner's mere dissatisfaction or disagreement with the outcome of his suppression motion is not sufficient to establish that an unconscionable breakdown occurred in violation of his Fourth Amendment rights." (internal quotation marks and alterations omitted)).

## CONCLUSION

The petition is denied. No certificate of appealability shall issue since Diggs has not made a substantial showing of the denial of a federal constitutional right. 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

Dated: March 5, 2013
Brooklyn, New York

/S/ Chief Judge Carol B. Amon
_____
Carol Bagley Amon
Chief United States District Judge